UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Carlos A. CALVO,<br><br>    Plaintiff,<br><br>  v.<br><br>Tony ALERS,<br><br>    Defendant. | Civ. No. 16-02783 (KM) (MAH)<br><br>**MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

  On May 3, 2016, the plaintiff, Carlos A. Calvo ("Calvo"), commenced this action by filing a *pro se* complaint in the Superior Court of New Jersey, Law Division, Special Civil Part, Small Claims Section, Bergen County. The defendant, Tony Alers ("Alers"), removed the action to this Court on May 17, 2016. On June 16, 2016, Alers filed a motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF no. 4) Calvo has not filed any opposition to Alers's motion. I nevertheless review the merits.

 **I. BACKGROUND**

  Calvo's complaint ("Complaint," ECF no. 1-1 at 5) consists of a one-page, small claims court form. He seeks a monetary judgment of $3,000 and costs for breach of contract and negligence. (*Id.*) The reasons he provides for the suit against Alvers, in full, are:

  CONTRACT VIOLATION – LOCAL 177 – IBT[1]

  TORT NEGLIGENCE

---

[1]  Alers explains that "IBT" stands for "International Brotherhood of Teamsters." (Def. Mot. 1 n.1)

1

> DID NOT GET PAID FOR WORK I DID
> WORK RELATED INJURY – DENIED

*Id.*

Attached to the Complaint are several documents. The first is a May 3, 2013 letter from United Parcel Service ("UPS") to Calvo regarding a "HEARING SUSPENSION." (ECF no. 1-1 at 6) Ryan Thibodeau, Division Manager, signed the letter on UPS's behalf and copied Labor Manager Eric Bringe, Employee File, Local 177. The letter states:

> Dear Mr. Calvo,
>
> This letter will make a record of a hearing that was held in the Saddle Brook facility on May 2, 2013. Present at this hearing were Tony Alers[,] Chris Eltzholtz (Business Agents, Local 177), . . . Ryan Thibodeau (Saddle Brook Package Division Manager) and you.
>
> Under discussion at this hearing was your Notice of Discharge issued on April 29, 2013 for proven dishonesty and failure to follow methods, policies and procedures. After a review of the facts, it was agreed upon by Tony Alers, Chris Eltzholtz, . . . and Ryan Thibodeau that your discharge would be converted to thirty (30) day suspension for failure to follow methods, policies and procedures to be served from April 30 through June 12, 2013. During this hearing you gave your firm commitment to follow the methods, policies and procedures and communicate with your operations management team.
>
> If, in the future, you should fail, once again, to follow any Company methods, procedures, policies or instructions, you will be subject to further disciplinary action up to and including your discharge from UPS.

(*Id.*)

The second attachment is a May 3, 2013 letter from Tony Alers to Calvo on Teamsters Local Union 177 letterhead. (ECF no. 1-1 at 7) The letter states:

> Dear Brother Calvo,
>
> I write to you regarding the hearing held on May 2, 2013 over your discharge from United Parcel Service.
>
> As you are aware, United Parcel Service offered a thirty (30) working day suspension in lieu of Discharge Arbitration, to which you accepted.

2

> Your acceptance of the thirty (30) working day suspension is to be served from April 30, 2013 and conclude on June 11, 2013. Your return to work date will be on June 12, 2013.
>
> If you have any questions regarding this matter, please feel free to contact me.

(*Id.*)

Also attached is a June 16, 2015 letter from Calvo to a Mr. Krumholtz (the "Krumholtz letter"), stating the following:

> Dear Mr. Krumholtz:
>
> The following documents are included per your request:
>
> 1. UPS pension plan summary plan description. (I will underline the important sections).
>
> 2. Collective bargaining agreement- article 40 (f) Break Periods
>
> 3. Collective bargaining agreement- article 40 (d)-(2) 3 hour guarantee of work
>
> 4. Collective bargaining agreement- article 45- section 2 b. & c. - with regards to work being assigned based on seniority.
>
> The pension plan for part-time employees is administered through UPS, not the union. The stipulations for the plan are that once an employee reaches 25 years of service they are entitled to a full pension payment that can begin at age 50. Anything less than the 25 years service, the employee must reach the retirement age of 65 to start collecting. The monthly pension payment is $1,250 per month. Carlos is currently in his 21st year of service. Since in 4 years Carlos both would have met the requirements of 25 years service, as well as would be 50 years old, we would be losing this benefit provided through UPS by entering into this settlement agreement. $1,250 per month multiplied by the 15 years between 50-65 yrs of age amounts to $225,000. A lot of money to give up over this settlement. We would hope to negotiate ideally that UPS would deem Carlos to be eligible for this early retirement clause that he can still collect at age 50, Right now his vested pension is $1,130/month. But would be eligible to obtain this benefit at 65. Is there a way to negotiate either receiving the $1,130 /month at age 50, or a reduced benefit amount payable at age 50, or at least 10% of this loss in potential earnings to be added to our settlement ($12,000) and still the protection of the original pension language.
>
> Thank you for your assistance.

(ECF no. 1-1 at 13) Of the documents listed in the Krumholtz letter, the UPS pension plan summary was not attached to the Complaint, but the collective bargaining agreement provisions listed as items 2–4 are attached.[2] (ECF no. 1-1 at 10–12)

Two last documents are attached to the Complaint. One appears to be a July 19, 2012 UPS call center incident report regarding the need to release without a signature a package containing perishable medication. (ECF no. 1-1 at 14) The other appears to be an e-mail from a Darcy Binder forwarding an electronic UPS shipment notification Binder received on September 23, 2011. (ECF no. 1-1 at 15)

Calvo provides no explanation for the relationship between any of these documents and the summary allegations in his Complaint.

## II.  LEGAL STANDARD

Defendant Alers has moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

Where a plaintiff, like Calvo here, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to

---

[2]  Alers describes these documents as an "[e]xcerpt from National Master United Parcel Agreement between the International Brotherhood of Teamsters and United Parcel Service, specifically pages 141, 138 and 140;" and an "[e]xcerpt from Collective Bargaining Supplemental Agreement between Teamsters Local Union No. 177 and United Parcel Service, specifically pages 20 and 21." (Def. Mot. 2)

4

less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro* se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. Appx. 325, 328 (3d Cir. 2010) (citation omitted).

### III. DISCUSSION

Alers, who is the business agent for Calvo's union, suggests that the cause of action that best fits Calvo's allegations would be one for breach of the duty of fair representation ("DFR"). I agree.[3]

The Supreme Court has described the duty of fair representation as a union's "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S. Ct. 903, 910, 17 L. Ed. 2d 842 (1967). As a Third Circuit panel summarized in *Raczkowski v. Empire Kosher Poultry*, 185 F. App'x 117 (3d Cir. 2006) (non-precedential):

> A union breaches its duty of fair representation if its conduct is "arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998). A union, however, "has broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567-68, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990). It acts arbitrarily only if its conduct "can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Marquez*, 525 U.S. at 45, 119 S. Ct. 292 (internal quotation marks and citations omitted). Even a union

---

[3] The complaint contains the words "contract" and "tort negligence," but no factual allegations of breach of contract or the violation of any tort duty of care.

> decision that is ultimately wrong is not a breach of its fair representation duty unless that decision is so unreasonable that it is "without rational basis or explanation." *Id.* at 46, 119 S. Ct. 292.

*Id.* at 118.

From the Complaint and attached documents I can glean the following allegations: (1) Calvo was employed by UPS in May 2013;[4] (2) On May 2, 2013, Calvo was the subject of a UPS hearing (the "hearing") for "proven dishonesty and failure to follow methods, policies and procedures," during which a Notice of Discharge was converted to a 30-day suspension; (3) At the time of the hearing, Calvo was a member of Teamsters Local Union 177; (4) Alers participated in the hearing as a business agent[5] for Local 177 and agreed to the conversion of the Calvo's discharge notice to a suspension; and (5) Alers contacted Calvo about the suspension following the hearing. Calvo's intended allegations against Alers surely relate to Alers's role as a union business agent and the union's obligations to represent Calvo's interests in proceedings with the employer.[6]

Alers argues that, based on these facts, no DFR claim could be viable, and urges that I dismiss the Complaint with prejudice, because amendment would be futile. In support, he asserts three persuasive grounds.

---

[4] The Complaint and its attachments provide insufficient information to ascertain whether Calvo continues to be employed by UPS.

[5] Although the specific duties of union business agent may vary by union, they generally include "participation in the negotiating of collective-bargaining agreements, organizing of union members, and processing of grievances." *See Finnegan v. Leu*, 456 U.S. 431, 434, 102 S. Ct. 1867, 1869, 72 L. Ed. 2d 239 (1982).

[6] The Complaint's seeming reference to withheld wages and the denial of a work-related injury do not plausibly allege that Alers is directly responsible for those alleged harms; it is the employer, not a union official, that would be responsible for such actions. Rather, it is more likely that Calvo intends to allege that Alers failed to fairly represent him in connection with a grievance for withheld wages and denial of workers' compensation. Similarly, although the Krumholtz letter provides little context to understand the nature of the "settlement agreement" to which it refers, it can be safely assumed that Alers's involvement, if any, would be in his capacity as business agent of Local 177.

### 1. Six-Month Statute of Limitations for DFR Claims

First, any DFR claims arising from the May 2, 2013 hearing—or related to any other of the Complaint's attachments—are untimely in light of a six-month statute of limitations to fair representation suits. The Supreme Court has applied the six-month statute of limitations in § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), to suits asserting both a claim for breach of a CBA against the employer and a DFR claim against the union for allegedly mishandling ensuing proceedings. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155, 103 S. Ct. 2281, 2285, 76 L. Ed. 2d 476 (1983). Although this case does not involve a claim against Calvo's employer, courts in Third Circuit, "interpreting *DelCostello,* have consistently held that § 10(b)'s six-month statute of limitations applies to pure fair representation suits." *Johnson v. Int'l Bhd. of Teamsters, Local 380*, No. CIV.A. 06-3699, 2007 WL 775604, at *4 (E.D. Pa. Mar. 8, 2007) (citing *Morabito v. United Food & Commercial Workers Union, Local 56,* No. 05-4036, 2006 WL 2087160 slip op. at 2 (E.D. Pa. July 21, 2006)), *aff'd sub nom. Johnson v. Int'l Bhd. of Teamsters (Local 830)*, 256 F. App'x 481 (3d Cir. 2007).

The six-month period for DFR claims begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *See Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The Complaint mentions no dates, and the most recent of the attached documents is the Krumholtz letter, dated June 16, 2015. Given that the documents all appear to have been within Calvo's knowledge and control on or close to the time they were dated, the limitations period for any DFR claim arising from the contents of the Complaint's attachments— or the events to which they relate—would have begun to run, at latest, June 16, 2015 and expire six months later on December 16, 2015. Consequently, the Complaint, intended to assert a DFR claim, was untimely when filed on May 3, 2016.

### 2. Immunity for Union Officers in DFR Suits

Second, the duty of fair representation is owed by the union itself; individual union officers, like Alers, are immune from suit in DFR actions or matters related to the collective bargaining process.

Section 301 of the Labor Management Relations Act ("LMRA") "immunizes the individual [union] defendants from liability for money damages." *Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre, Local 120*, 647 F.2d 372, 378 (3d Cir. 1981) (citing *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S. Ct. 1318, 8 L. Ed. 2d 462 (1962)). However, the duty of fair representation is derived not from the LMRA but from the NLRA,[7] and the Third Circuit has yet to directly address whether the § 301 immunity extends to DFR claims. Nevertheless, I agree with courts, including those in this district, that have concluded that the immunity applies equally to DFR claims. *E.g.*, *Franklin v. Nat'l Mar. Union of Am., (MEBA/NMU)*, No. CIV. A. 91-480, 1991 WL 131182, at *4 (D.N.J. July 16, 1991) (agreeing that "the language of § 301(b) and the Supreme Court's decision in *Atkinson* . . . provide[s] a shield for individual union . . . officials" in DFR suits) (citing *Evangelista v. Inland Boatmen's Union of Pacific*, 777 F.2d 1390, 1400 (9th Cir. 1985)), *aff'd*, 972 F.2d 1331 (3d Cir. 1992).

### 3. Preemption of State Law Causes of Action

Third, any state law contract and tort claims that Calvo may have intended to assert are entirely preempted by the LMRA.

Calvo attaches several provisions of the collective bargaining agreement ("CBA") between the union and UPS. (ECF no. 1-1 at 10–12) That is the only possible basis for a breach of contract claim. It is black letter law, however, that "any state-law cause of action for violation of a [CBA] is entirely preempted

---

[7] "The [Supreme] Court has recognized on numerous occasions that '[t]he duty of fair representation is . . . implicit in the National Labor Relations Act.'" *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 & n.2, 101 S. Ct. 1559, 1566, 67 L. Ed. 2d 732 (1981) (quoting *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46 n.8, 99 S. Ct. 2121, 2124, 60 L. Ed. 2d 698 (1979))

by section 301 of the LMRA." *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 232, 161 (3d Cir. 1999) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) ("When resolution of a state-law claim is substantially dependent upon analysis of the terms of a [CBA], that claim must either be treated as a § 301 claim or dismissed as preempted by federal-labor contract law.")).

The basis for any possible tort claim is not really discernible. It matters little, however, because preemption applies to tort actions as well as breach of contract actions. *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859, 107 S. Ct. 2161, 2167, 95 L. Ed. 2d 791 (1987) ("[A]n employee's state-law tort action that necessarily rests on an interpretation of those terms is preempted by § 301.") (citing *Allis–Chalmers*, 471 U.S. at 218–19).

### IV. CONCLUSION

For the foregoing reasons, Alers's motion to dismiss for failure to state a claim is GRANTED, and Calvo's complaint is DISMISSED.

Out of caution, I will enter this dismissal without prejudice to the submission, within 21 days, of an amended complaint that remedies the deficiencies identified above. In doing so, I am mindful of Calvo's *pro se* status, the Complaint's origins in small claims court, and the fact that, for whatever reason, Calvo has submitted no opposition to Alers's motion to dismiss.

An appropriate Order follows.

Dated: January 26, 2017

　　　　　　　　　　　　　　　　　　　　／s／ Kevin McNulty
　　　　　　　　　　　　　　　　　　　　**HON. KEVIN MCNULTY, U.S.D.J.**